UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LEE A. BARNES,

              Petitioner,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS,

              Respondent.

_____/

Case No. 1:17-cv-265

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a former state prisoner under 28 U.S.C. § 2254.  On November 27, 2013, Petitioner entered a plea of *nolo contendere*[1] in the Kent County Circuit Court to a charge of possession with intent to deliver heroin in an amount less than 50 grams, MICH. COMP. LAWS § 333.7401(2)(a)(iv).  In exchange for his plea, the prosecutor agreed to dismiss: a second charge of possession with intent to deliver heroin in an amount less than 50 grams; a charge of maintaining a drug house, MICH. COMP. LAWS § 333.7405(d); and the notice of Petitioner's status as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12.  On December 21, 2013, the court imposed a sentence of one to twenty years.

_____

[1] In Michigan, a *nolo contendere* plea has essentially the same effect on the criminal prosecution as does a plea of guilty.  *People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).  It similarly waives a claim that the evidence of guilt is insufficient in the same way that a plea of guilty does.  *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010); *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982).

On February 15, 2017,[2] Petitioner filed his habeas corpus petition raising the

following eight grounds for relief:

I.      Improper assessment of 5 points p[u]rsuant to OV 12 Mich[igan] Sent[entencing] Guidelines.

II.     Abuse of discretion in denying of motion to withdraw no contest plea.

III.    Defense counsel failed to actually advocate and fo[r] his client which amounted to a constructive denial of counsel where "prejudice" is presumed.

IV.     Trial counsel was ineffective for failing to advise [Barnes] of serious direct consequence of pleading [no contest].

V.      The drugs found at Barnes's apartment were not his, and that the same charges, possession with intent to deliver heroin, and . . . maintaining a drug house, were used to enhance his guidelines under OV 12.  The same conduct is being counted more than once.

VI.     OV 12 was scored incorrectly scored and the sentencing guidelines on which the trial court relied were inaccurate, [the same charges, possession with intent to deliver heroin and maintaining a drug house,] cannot be used to establish contemporaneous felonies because they were not separate from the sentencing offense.

VII.    Motions to withdraw guilty pleas after acceptance of the plea and before sentencing are governed by MICH. CT. R. 6.310, which provides that a trial court may allow plea withdrawal before sentencing "in the interest of justice," unless withdrawal would "substantially prejudice the prosecutor because of reliance on the plea."  Trial counsel never advised Barnes that his plea would

---

[2] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

waive his right to challenge the illegal search of his vehicle and
his apartment and the reliability of the informant.

VIII. The two charges dismissed by the plea agreement occurred from
the same case and are not separate for the purpose of scoring OV
12.

(Pet., ECF No.1, PageID.8, 10-11, 13; Pet'r's Appl. for Leave to Appeal, ECF No. 1-1,

PageID.59, 62-67.)[3]   Respondent has filed an answer to the petition (ECF No. 4)

stating that the grounds should be denied because they are moot, non-cognizable,

procedurally defaulted, and/or meritless.

Upon review and applying the standards of the Antiterrorism and Effective

Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the

grounds are moot, non-cognizable, or meritless.   Accordingly, I recommend that the

petition be denied.

## Discussion

### I.    Factual allegations

On July 11, 2013, Grand Rapids Police Department Vice Officer Robert

Stanton received a telephone call from a reliable informant that a black male named

Lee Barnes, with braided hair, driving a dark blue Nissan Maxima, had heroin in his

---

[3] The petition states the first three of the habeas issues.  With respect to the fourth
habeas issue, it refers the reader to the attached state court pleadings.  The attached
pleadings, in turn, identify several additional issues.   Petitioner's application for
leave to appeal to the Michigan Supreme Court on his direct appeal appears to
contain the most complete statement of Petitioner's additional issues.  To ensure that
all of the issues Petitioner may have intended to raise are addressed, the undersigned
will address all of the issues raised in Petitioner's Michigan Supreme Court
application for leave to appeal.   That was the approach adopted by Respondent in
answering the petition.  (*See* Answer, ECF No. 4, PageID.80-81.)

possession.  (Mot. Hr'g Tr., ECF No. 5-2, PageID.136.)  About an hour later, Officer Stanton observed a car and driver matching that description.  *(Id.)*, PageID.137.)  He followed the vehicle to a retail business parking lot.  *(Id.)*  He observed an individual on a bicycle approach the vehicle, lean into the driver's window, and apparently make an exchange with the driver.  *(Id.)*  Officer Stanton surmised that he had witnessed a drug transaction.

Officer Stanton arranged for a uniformed officer, Officer Paul Smith, in a marked police car to stop the vehicle.  *(Id.)*, PageID.137-138.)  He assisted in the stop and the search of the vehicle.  *(Id.)*  He located a "chunk" of heroin, cash in the amount of $306.00, and some mail indicating Mr. Barnes' address.  *(Id.)*, PageID.138.)

Officer Stanton secured a search warrant for Petitioner's address.  Using the keys obtained when the vehicle was seized, Officer Stanton entered the home.  *(Id.)*, PageID.139.)  Under the warrant, Officer Stanton seized cash, a digital scale, sandwich bags, two corner bags, marijuana, and two bags of heroin.  (Sentencing Hr'g Tr., ECF No. 5-5, PageID.151.)

The prosecutor charged Petitioner with possession with intent to deliver based on the heroin in the car, possession with intent to deliver based on the heroin in the house, and maintaining a drug house.  (Kent Cnty. Cir. Ct. Docket Sheet, ECF No. 5-1, PageID.128.)  The prosecutor also filed a habitual offender-fourth offense notice. *(Id.)*  Petitioner moved to suppress the evidence seized in the search of the vehicle and his home.   The court denied that relief.   (Mot. Hr'g Tr. I, ECF No. 5-2, PageID.143-144.)

If the evidence seized could be admitted against him, Petitioner believed he could not prevail at trial. (Plea Hr'g Tr., ECF No. 5-4, PageID.148-149.) Accordingly, he accepted the plea offer tendered by the prosecution. *(Id.)* Petitioner described the circumstances as coercive. *(Id.)* The trial court offered Petitioner the opportunity to proceed with trial, instead. *(Id.)* Petitioner declined. *(Id.)* The court concluded that Petitioner's plea was knowingly, intelligently, and voluntarily made. *(Id., PageID.149.)* The advice-of-rights form signed by Petitioner indicated that he understood that he would giving up any appeal as of right. (ECF No. 5-3, PageID.145.)

Although the negotiated plea resulted in the dismissal of the charges related to the evidence found at Petitioner's home, the criminal activity was still taken into account in computing Petitioner's Offense Variable 12 score under the Michigan Sentencing Guidelines. Counsel objected to scoring based on the evidence from the home because Petitioner had never admitted that conduct and because the conduct was being counted twice. (Sentencing Hr'g Tr., ECF No. 5-5, PageID.151.) If the trial court accepted either argument, Petitioner's minimum sentence range would shift from 10 to 25 months to 0 to 17 months. *(Id.)* The court overruled both objections. *(Id., PageID.151-152.)*

Petitioner was provided the opportunity to address the court directly at sentencing. He again argued the suppression issues. *(Id., PageID.152.)* When the court again rejected the arguments, Petitioner stated he wished to withdraw his plea because it was coerced by the court's ruling on the suppression issue. *(Id.,*

PageID.152-153.)  Petitioner also complained that his counsel refused to file a motion for reconsideration on the suppression issue because counsel believed such a motion would be futile.  *(Id.*, PageID.152.)  The court confirmed counsel's belief regarding the futility of such a motion, denying Petitioner's oral motion for reconsideration.  *(Id.)* The court went on to explain that Petitioner's stated expectation that he could raise the issue with the court of appeals was entirely unfounded.  The court noted that Petitioner had initially sought to make a conditional plea that would have permitted him to plead but preserve the suppression issue on appeal.  *(Id.*, PageID.153.)  The court said that it does not accept conditional pleas and that, before Petitioner ever entered his plea, he was informed that he could go to trial and continue to contest the suppression issue or he could take the plea bargain.  *(Id.*, PageID.153-154.)  The court indicated that there was no way that Petitioner could interpret the plea—as bargained for and entered—to be a conditional plea, or that Petitioner, given his extensive criminal history, could legitimately consider the circumstances coercive so as to permit withdrawal of the plea.  *(Id.)*

The court sentenced Petitioner to a minimum of one year imprisonment, which fell within the minimum range that would have applied if the court had accepted Petitioner's scoring argument.  The court imposed the mandatory, statutory maximum of twenty years.[4]

---

[4] In Michigan, unless the only punishment prescribed by law for an offense is life imprisonment, the court imposing sentence must fix a minimum term of imprisonment and a maximum term; however, the maximum term is always the maximum penalty provided by statute.  MICH. COMP. LAWS §§ 769.8, 769.9.  For some

Petitioner applied for leave to appeal in the Michigan Court of Appeals raising his first two habeas issues.  That court denied relief by order entered July 28, 2014. (Mich. Ct. App. Ord., ECF No. 5-6, PageID.155.)  Petitioner then sought leave to appeal in the Michigan Supreme Court raising all eight of his habeas issues.  The Supreme Court denied leave by order entered October 28, 2015.  (Mich. Ord., ECF No. 5-7, PageID.194.)

Petitioner did not file a petition for certiorari in the United States Supreme Court.  Instead, he filed his first petition in this Court raising his first three habeas issues.  *Barnes v. Mich. Dep't of Corr.*, No. 1:16-cv-92 (W.D. Mich.) (herein "*Barnes I*") (Pet., ECF No. 1).  The Court dismissed the petition because Petitioner had failed to exhaust his state court remedies with respect to his third habeas issue.  *Barnes I* (Op. & J., ECF 7, 9).

Petitioner returned to the Kent County Circuit Court.  He filed a motion for relief from judgment under MICH. CT. R. 6.500 *et seq*. raising all of his habeas issues. (Mot., ECF No. 5-9.)  The circuit court denied relief by opinion and order entered May 5, 2016.  (Kent Cnty. Cir. Ct. Op. & Order, ECF No. 5-10.)  Petitioner sought leave to appeal that denial in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied relief by orders entered June 24, 2016, and January 5, 2017, respectively.  (Mich. Ct. App. Order, ECF No. 5-11, PageID.318; Mich. Order, ECF No. 5-12, PageID.382.)

---

offenses, the maximum penalty is fixed.  *See, e.g.*, MICH. COMP. LAWS § 333.7401(2)(a)(iv) (possession with intent to deliver < 50 grams—20 years).

Petitioner then returned to this Court and filed the instant petition.   The MDOC discharged Petitioner on April 20, 2017.[5]

## II.   AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*,

---

[5]   http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=160068   (last visited Jan. 9, 2018).  This Court takes judicial notice of the information provided by a search of the Michigan Department of Corrections Offender Tracking Information System ("OTIS") website with regard to Petitioner.  *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821–22 n.3 (E.D. Mich. 2004).

529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In

determining whether federal law is clearly established, the Court may not consider

the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*,

271 F.3d at 655.  Moreover, "clearly established Federal law" does not include

decisions of the Supreme Court announced after the last adjudication of the merits in

state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an

examination of the legal landscape as it would have appeared to the Michigan state

courts in light of Supreme Court precedent at the time of the state-court adjudication

on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565

U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the

state court applies a rule different from the governing law set forth in the Supreme

Court's cases, or if it decides a case differently than the Supreme Court has done on

a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529

U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show

that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct

at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words,

"[w]here the precise contours of the right remain unclear, state courts enjoy broad

discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S.

___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Guidelines scoring (Issues I, V, VI, and VIII)

Petitioner's unconditional discharge from his sentence renders moot his claims that his sentencing guidelines scores were miscalculated.  With respect to Petitioner's habeas issues I, V, VI, and VIII, his discharge eliminates the "case or controversy" necessary to provide this Court jurisdiction under Article III, § 2 of the United States Constitution.  As the Supreme Court noted in *Spencer v. Kemna*, 523 U.S. 1(1998):

> "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . .  The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477–478, 110 S.Ct. 1249, 1254, 108 L.Ed.2d 400 (1990).  *See also Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975).  This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision*." Lewis, supra*, at 477, 110 S.Ct., at 1253.
>
> An incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction.  Once the convict's

> sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained.  *See, e.g., Carafas*, supra, at 237–238, 88 S.Ct., at 1559–60.

*Spencer*, 523 U.S. at 7.  If the petitioner challenges the conviction, the Supreme Court has looked to collateral consequences—even remote consequences that are unlikely to occur—to supply the injury to be redressed, thereby establishing a case or controversy.  *Id*. 523 U.S. at 8, (*citing Sibron v. New York*, 392 U.S. 40, 54-58 (1968)).

The *Spencer* majority concluded that a constitutional challenge to a parole revocation proceeding was moot once the sentence had expired, rejecting a laundry list of collateral consequences offered by the petitioner.  Similarly, the Supreme Court concluded an attack on a sentence was rendered moot when the sentences expired during the course of the habeas proceedings.  *Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since respondents had elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot."); *see also North Carolina v. Rice*, 404 U.S. 244, 248 (1971) ("Nullification of a conviction may have important benefits for a defendant, as outlined above, but urging in a habeas corpus proceeding the correction of a sentence already served is another matter."); *United States v. Waltanen*, 356 Fed. Appx. 848, 851 (6th Cir. 2009) ("[I]f a prisoner does not challenge the validity of the conviction but rather only challenges his sentence or some aspect of it, the request for relief is moot once the challenged portion of the sentence has expired.") (internal quotation marks omitted).

In four of Petitioner's eight issues he challenges only the calculation of the minimum end of his sentence.  Those challenges have been rendered moot by his

release.  Even if this Court agreed that the calculation of Petitioner's sentence were constitutionally infirm, there is nothing to be redressed by a favorable judicial decision.  He has already obtained the only relief this Court could offer: unconditional release.  Petitioner fails to identify any collateral consequence that might permit this Court to provide Petitioner relief.  Accordingly, the undersigned recommends that Petitioner's habeas issues I, V, VI, and VIII be denied as moot.

## IV.   Ineffective assistance of counsel (Issues III)

Petitioner contends his trial counsel effectively abandoned him when counsel failed to file a motion for reconsideration or an interlocutory appeal of the trial court's denial of Petitioner's suppression motion.  (Appl. for Leave to Appeal, ECF No. 5-7, PageID.221-222.)  Petitioner also complains that counsel failed to challenge the use of information from the confidential informant based on Petitioner's Sixth Amendment right to confront the witnesses against him.  (*Id*.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The defendant bears the burden of overcoming the presumption that the challenged

12

action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner invites the Court to set aside the two-prong *Strickland* analysis, with its requirement to show prejudice, in favor of the standard discussed in *Strickland's* companion case, *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court recognized that a complete denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. Such a complete denial might occur when counsel is absent. But the *Cronic* Court recognized that it might also occur "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" or "circumstances of [a similar] magnitude may be present . . . when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-660; *see also Bell*, 535 U.S. at 695-696 (court identified the three *Cronic* "complete denial" circumstances: (1) absence at a critical stage; (2) complete failure to meaningfully and

adversarially test the prosecution's case; and (3) extreme circumstances that would prevent competent counsel from being able to render assistance).

Petitioner argues that his counsel's performance falls within the second *Cronic* circumstance: a complete failure to subject the prosecution's case to adversarial testing.   In *Bell*, the Court made clear that the necessary failure to test the prosecution's case must be complete.   *Bell*, 535 U.S. at 697.  Where a petitioner contends his counsel failed at specific points, the proper test to apply is *Strickland*, not *Cronic*.  *Id*.

Here, Petitioner claims that his counsel failed at specific points during the proceedings.  It is not that counsel failed to file a suppression motion, or that counsel failed to adequately question the witnesses or argue Petitioner's position at the hearing.  Rather, Petitioner claims that his counsel failed to subject the prosecution's case to meaningful adversarial testing because counsel would not seek reconsideration of the suppression motion, file an interlocutory appeal, or continue to challenge the use of the confidential informant on Confrontation Clause grounds. Petitioner's challenges are clearly directed to specific points in counsel's representation, not the entire scope of it.  Accordingly, *Strickland* is the appropriate test.

Counsel's conduct in failing to pursue a motion for reconsideration, interlocutory appeal, or Confrontation Clause challenge at the suppression hearing was neither professionally unreasonable nor prejudicial because such actions would have been futile.   Petitioner raised the motion for reconsideration himself at

sentencing.  (Sentencing Tr., ECF No. 5-5, PageID.152.)  The Court denied the motion as meritless.  Petitioner raised the issue at the Michigan Court of Appeals through his ineffective assistance of counsel claim.  That court refused to hear the appeal "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 5-6, PageID.155.)  Finally, any Confrontation Clause challenge to hearsay testimony at the suppression hearing would have been meritless because "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725 (1968); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) ("The opinions of this Court show that the right to confrontation is a *trial* right . . . .") (emphasis in original).  The clause does not preclude reliance on hearsay testimony at a pretrial hearing.

The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, the state courts' rejection of Petitioner's ineffective assistance claims is neither contrary to, nor an unreasonable application of, *Strickland*, the clearly established federal law regarding such claims.

Moreover, when Petitioner entered his plea, he waived these ineffective assistance claims.  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v.*

*Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The

United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, he may not thereafter raise independent
> claims relating to the deprivation of constitutional rights that occurred
> prior to the entry of the guilty plea. He may only attack the voluntary
> and intelligent character of the guilty plea by showing that the advice
> he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives

all nonjurisdictional defects in the proceedings, including a claim of ineffective

assistance of counsel that does not relate to the voluntariness of the plea. *See United

States. v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

Petitioner's claims of ineffective assistance relating to the suppression hearing

do not attack the voluntary or intelligent nature of his plea by showing that counsel's

advice was inadequate, but instead relate to earlier alleged constitutional

deprivations. His claims have therefore been waived by his subsequent guilty plea.

*See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209

(9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

### V.    Plea invalidity (Issues II, IV, and VII)

Petitioner also raises an ineffective assistance of counsel claim that attacks the

validity of his plea. He claims that counsel failed to adequately inform Petitioner of

the consequences of the plea with regard to waiving his right to appeal the denial of

the suppression motion and that counsel failed to inform Petitioner that there was

an option of negotiating a conditional plea that might preserve Petitioner's right to

16

challenge denial of the suppression motion.  Although Petitioner's argument that his plea was involuntary plainly implicates his federal constitutional rights, he casts his argument as a challenge to the trial court's denial of his motion to withdraw the plea under state court rules.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state court rules is not cognizable on habeas corpus review.

Even if Petitioner's argument is considered under federal constitutional principles, he is not entitled to relief.  As noted above, a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett*, 411 U.S. at 267.  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.

17

In order to find a guilty plea constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976);  *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.");

*Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel relating to the plea will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

Petitioner contends his plea is invalid because it was not knowingly and voluntarily entered into.  He claims his counsel did not tell him he would be giving up his right to appeal the denial of the suppression motion.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the circumstances were different than he represented at the hearing.  In *Baker v. United*

*States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms.  The Sixth Circuit held that, where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).  The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90.

The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), both Section 2255 cases.  In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty.  The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026.  Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing.  Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.  In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped"

20

him from relying on undisclosed promises.  *Warner*, 975 F.2d at 1210.  *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

At the plea hearing, the prosecutor reported the terms of the plea agreement. In exchange for Petitioner's plea of *nolo contendere* to the first count, the prosecutor would dismiss two other counts and the supplemental information regarding Petitioner's status as a habitual offender-fourth offense.  (Plea Hr'g Tr., ECF No. 5-4, PageID.147.)  The prosecutor also recommended a minimum guideline range of 10 to 23 months.  (*Id*.)  Petitioner reported that those were the only promises made under the plea agreement.  (*Id*., PageID.148.)  Petitioner also acknowledged that he had signed the advice of rights form.  (*Id*.)  The form clearly states that Petitioner would be giving up his ability to appeal as of right.  (Advice of Rights Form, ECF No. 5-3, PageID.145.)

Nonetheless, Petitioner complained to the trial court that he felt coerced. (Plea Hr'g Tr., ECF No. 5-4, PageID.148-149.)  Petitioner voiced his desire to continue to challenge the trial court's denial of his suppression.  (*Id*.)  The court explained that if he wanted to continue to fight that issue, he should not enter a plea, he should instead go to trial.  (*Id*.)  Faced with that choice, Petitioner said he would enter the

plea.  (*Id.*)  The trial court found that Petitioner's plea was knowing, intelligent, and voluntary.  (*Id.*, PageID.149.)

In light of the extended discussion of the issue during Petitioner's plea hearing, the trial court was taken aback at sentencing when Petitioner moved to withdraw his plea, again claiming coercion and again expressing his desire to continue to litigate the suppression motion.  (Sentencing Hr'g Tr., ECF No. 5-5, PageID.152-154.)  The trial court recalled the discussion at the plea hearing.  (*Id.*)  The court explained that he did not take pleas conditioned on a defendant's right to pursue an issue on appeal. The court also explained that is why he told Petitioner at the plea hearing that Petitioner would have to proceed to trial if he wanted to continue to raise the suppression issue.  (*Id.*)  The court denied Petitioner's motion to withdraw the plea, rejecting Petitioner's claim that the plea was coerced.  (*Id.*)

Under these circumstances, it is entirely disingenuous for Petitioner to claim that he did not know that one consequence of his plea would be the loss of his ability to continue to challenge denial of the suppression motion on appeal.  If he believed he had the opportunity to continue to so challenge the trial court's denial of the suppression motion on appeal, he had every opportunity to so inform the court when: (1) the court asked if Petitioner understood what he was giving up when he waived his appeal as of right; or (2) when the court asked if Petitioner was relying on any promises other than those stated by the prosecutor.  At the plea hearing, the court directly addressed Petitioner's continuing ability to contest the suppression hearing

result.  The court told Petitioner he had a choice—he could continue to challenge that result or he could enter a plea.  Petitioner chose the plea.

Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker*, 781 F.2d at 90).  To hold otherwise would "[render] the plea process meaningless . . . ."  *Id.*  Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court.  *Id.*

The plea colloquy also forecloses any relief on Petitioner's claim that counsel rendered ineffective assistance relating to the plea.  The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Even if, as Petitioner now claims, counsel misinformed Petitioner regarding appeal of the suppression motion denial, the court corrected any possible misperception counsel created.  If Petitioner entered that hearing believing he could continue that fight on appeal because counsel told him so, the court disabused

Petitioner of that belief at the hearing.  Petitioner cannot, therefore, show prejudice. He knew the true state of affairs at the hearing and entered his plea anyway.

The state courts' conclusions regarding the voluntariness of Petitioner's plea are well-grounded in the record and are entirely consistent with, not contrary to, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

24

In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated: January 18, 2018                     /s/  Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).